Nicholas R. PIZZITOLO,
Plaintiff-Appellant,

and

National Union Fire Insurance Company, Intervenor-Appellant,

v.

ELECTRO–COAL TRANSFER CORPORATION, Defendant-Appellee.

No. 86–3006.

United States Court of Appeals,
Fifth Circuit.

March 20, 1987.

Ferdinand J. Kleppner, Victor A. Marsiglia, Jr., Metairie, La., for plaintiff-appellant.

Lance S. Ostendorf, New Orleans, La., for National Union Fire Ins. Co.

John O. Charrier, Jr., Jeanmarie LoCoco, New Orleans, La., for defendant-appellee.

Before GARZA, DAVIS and JONES, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Pizzitolo filed this action against his employer, Electro-Coal Transfer Corp. (Electro-Coal), to recover damages under the Jones Act for personal injuries he suffered in the course of his employment. Following a trial, the jury returned a verdict for Pizzitolo but the district court granted Electro-Coal's motion for judgment notwithstanding the verdict. The district court concluded that Pizzitolo was not a seaman and his exclusive remedy against his employer was provided by the Longshore and Harbor Workers' Compensation Act (LHWCA). We affirm.

## I.

## FACTS

Electro-Coal owns and operates a coal terminal on the west bank of the Mississippi River near Davant, Louisiana. The terminal consists of shoreside buildings, a coal storage area and a dock. Electro-Coal routinely transfers coal from vessel-to-vessel and between vessels and the shoreside storage area.

Barges bringing coal to Electro-Coal are ordinarily tied to the dock adjacent to the terminal. This coal is then either loaded onto other barges, on seagoing vessels or is stored at the terminal for later loading. The vessels are loaded and unloaded by

large electric powered cranes and a series of electric powered conveyor belts. Electro-Coal owns and operates four harbor tugs and a crane barge to load, unload and otherwise assist vessels calling at its terminal. A sister corporation owns twelve oceangoing tugs and barges that regularly call at the Davant terminal.

Pizzitolo is employed by Electro-Coal as an electrician. He works a standard forty-hour week. When he arrives for work in the morning he reports to the shore-based electrical shop where he receives an assignment from one of his foremen. When he finishes that assignment, he returns to the shop for a new one.

Pizzitolo spent approximately 75% of his work time maintaining and repairing the shore-based electrical machinery. The other 25% of his work time was spent replacing or repairing electrical equipment on vessels owned by Electro-Coal and its sister company while the vessels were tied up at the terminal dock.

At the time of his injury, Pizzitolo was standing on a scaffold board above the river, repairing one of the conveyors used to load and unload vessels. The scaffold board on which he was standing broke and he fell into the river.

Pizzitolo filed this suit against Electro-Coal seeking damages as a seaman under the Jones Act for injuries he suffered in the accident. During the liability phase of the bifurcated jury trial, three issues were presented to the jury: (1) whether Pizzitolo was a seaman and thus eligible to recover damages under the Jones Act; (2) whether Electro-Coal was negligent; and (3) whether Pizzitolo was contributorily negligent. The jury answered questions (1) and (2) yes. The district court disagreed with the jury's finding that Pizzitolo was a seaman and granted Electro-Coal's motion for JNOV on the issue of seaman status; Pizzitolo appeals that ruling. Electro-Coal is displeased with the district court's refusal to grant its motions for directed verdict and judgment NOV on grounds the evidence was insufficient to support the jury's finding that it was negligent.

## II.

The question we must decide is whether the jury was entitled to find that Pizzitolo, a harbor worker whose contact with vessels is limited to performing vessel repairs, was a seaman within the meaning of the Jones Act.

The parties frame the dispute as one of whether Pizzitolo qualifies as a seaman or member of the crew of a vessel under a prong of the familiar *Offshore Co. v. Robison*, 266 F.2d 769, 779 (5th Cir.1959) test: whether Pizzitolo performed a substantial portion of his work aboard a fleet of vessels. Because coverage under the Jones Act and the LHWCA is mutually exclusive, this argument assumes that Pizzitolo is not covered by the LHWCA. For reasons that follow, we conclude that this premise cannot stand; Pizzitolo is covered by the LHWCA and is not a member of the crew of a vessel. We will first consider the reasons Congress adopted the LHWCA in 1927 and who were the intended beneficiaries of the Act. We will then examine the 1972 amendments to the Act and their effect on coverage of ship repairers like Pizzitolo under the Act.

### A. HISTORICAL BACKGROUND

Before Congress passed the Jones Act in 1920, seamen had no right to sue the vessel owner for negligence. *Chelentis v. Luckenback S.S. Co.*, 247 U.S. 372, 38 S.Ct. 501, 62 L.Ed. 1171 (1918). The Jones Act, overruled *Chelentis* and granted "any seaman" an action for damages for the negligence of the vessel owner, the master or fellow crewmembers. Act of June 5, 1920, Ch. 250 § 33, 41 Stat. 1007 (codified at 46 U.S.C. § 688).

A compensation scheme for harbor workers developed much slower. In 1917, the Supreme Court in *Southern Pacific Co. v. Jensen*, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917) held that a state could not constitutionally make its workmen's compensation laws applicable to harbor workers injured on a vessel. The Court reasoned that the application of different state

statutes would result in the "destruction of the very uniformity in respect to maritime matters which the constitution was designed to establish." *Id.* at 217, 37 S.Ct. at 529.

Congress recognized the gap: State compensation acts covered workmen injured on the dock yet land-based harbor workers injured aboard vessels had no compensation remedy. Between 1917 and 1927, Congress struggled to provide benefits to harbor workers. Its first attempt came five months after *Jensen* was decided. Congress sought to make state compensation remedies available to harbor workers by amending the Saving to Suitors Clause to preserve "to claimants the rights and remedies under the workmen's compensation law of any state." Act of Oct. 6, 1917, Ch. 97, 40 Stat. 395. But the Court in *Knickerbocker Ice Co. v. Stewart*, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834 (1920) struck down this effort on grounds that Congress could not delegate such legislation to others.

Congress apparently thought that state compensation benefits could be constitutionally extended to harbor workers if they made it clear that such benefits were not available to seamen.[1] In 1922, after enacting the Jones Act remedy for seamen, Congress tried once again to make state compensation statutes available to land-based harbor workers. This time, Congress amended the Savings to Suitors Clause to preserve "to claimants for compensation for injuries to or death of persons other than to master or members of a crew of a vessel, their rights and remedies under the workmen's compensation law of any state, district, territory or possession of the United States, which rights and remedies when conferred by law shall be exclusive...." Act of June 10, 1922, Ch. 216, 42 Stat. 634.

The exclusion of vessel crewmembers from coverage under this legislation did not save it; in *Washington v. W.C. Dawson & Co.*, 264 U.S. 219, 44 S.Ct. 302, 68 L.Ed. 646 (1924), the Court held the legislation unconstitutional.

Another significant opinion from the Supreme Court was handed down shortly before Congress passed the LHWCA. In *International Stevedoring Co. v. Haverty*, 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157 (1926), a longshoreman was injured by the negligence of a fellow employee and the injured longshoreman sued his employer under the Jones Act. The Court allowed Haverty to recover under the Jones Act by giving an expansive interpretation to the word seaman "to include stevedores employed in maritime work on navigable waters." *Id.* at 52, 47 S.Ct. at 19.

In 1927, within months of the *Haverty* decision, Congress passed a uniform federal compensation act for maritime workers, the LHWCA.[2] This Act required the employer to provide prescribed benefits "in respect of disability or death of an employee, but only if a disability or death results from an injury occurring upon the navigable waters of the United States ... and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by state law." The intended beneficiaries of the Act are spelled out in the Senate report:

> The purpose of this bill is to provide for compensation, in the stead of liability, for a class of employees commonly known as "longshoremen." These men are mainly employed in loading, unloading, refitting and repairing ships: but it should be remarked that injuries occurring in loading or unloading are not cov-

---

1. See Gilmore & Black, *The Law of Admiralty* 407 (2d ed. 1975); Engerand & Bale, *Seaman Status Reconsidered*, 24 S.Tex.L.J. 431, 442 n. 89 (1983).

   Both houses of Congress distinguished between port workers and seamen. The Senate report provided that: "Longshoremen and ship repairmen are land workers subject neither to the peculiar conditions nor to the laws which regulate seamen. They form a part of the labor force of each state exactly as other workmen in the port in which they are employed. They are

not migratory but local; their wages, their conditions of living are governed by local standards." S.Rep. No. 94, 67th Cong., 1st Sess. 1, 2–3 (1921). The House Report provided that the harbor workers "are part of the local labor force and are permanently subject to the same conditions as are other local workmen." H.R. Rep. No. 639, 67th Cong., 2d Sess. 1, 2 (1922).

2. Act of March 4, 1927, Ch. 509, 44 Stat. 1424 (codified as amended at 33 U.S.C. §§ 901–950).

ered unless they are on the ship or between the wharf and the ship so as to bring them within the maritime jurisdiction of the United States.

S.R. No. 973, 69th Cong., 1st Sess. 16 (1927). The 1927 Act, consistent with the 1922 Act, did not extend benefits to "a master or member of a crew of any vessel...." Act of March 4, 1927, Ch. 509, § 2(3), 44 Stat. at 1425.

No definition of "member of a crew" is included in the LHWCA, but two Supreme Court cases are instructive on its meaning. In *South Chicago Coal & Dock Co. v. Bassett*, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732 (1940), a workman drowned while working aboard a lighter used for providing coal to steamships. The Court was presented with the question of whether his widow was entitled to benefits under the LHWCA.

The Court described generally the type workers who were covered by the Act despite the "member of the crew" exception:

> We think it is clear that Congress in finally adopting the phrase 'a master or member of a crew' in making its exception, intended to leave entitled to compensation all those various sorts of longshoremen and harbor workers who were performing labor on a vessel....

> \* \* \* \* \* \*

> They were persons serving on vessels, to be sure, but their service was that of laborers, of the sort performed by longshoremen and harbor workers and thus distinguished from those employees on the vessel who are naturally and primarily on board to aid in her navigation.

*Id.* at 257, 260, 60 S.Ct. at 548, 549.

The most definitive expression by the Court on the meaning of the member of the crew exclusion and the relationship between that exclusion and "seamen" in the

Jones Act was made in *Swanson v. Marra Brothers, Inc.*, 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045 (1946). The question before the Court was whether a longshoreman injured on a dock could recover benefits under the Jones Act. The employee argued that *Haverty* established his right to claim Jones Act benefits and that his right to such benefits was unaffected by the LHWCA because he was injured on land, outside the coverage of the LHWCA. The Court first discussed the relationship between the member of the crew exclusion of the LHWCA and seamen who are covered by the Jones Act: "We must take it that the effect of these provisions of the Longshoremen's Act is to confine the benefits of the Jones Act to the members of the crew of a vessel plying in navigable waters and to substitute for the right of recovery recognized by the *Haverty* case only such rights to compensation as are given by the Longshoremen's Act." *Id.* at 7, 66 S.Ct. at 872. The Court made it clear that the LHWCA legislatively overruled *Haverty:* "The Act thus excludes from its benefits stevedores not members of the crew who are injured on navigable waters from recovering under the Jones Act as interpreted by the *Haverty* Case." *Id.* at 6, 66 S.Ct. at 871. The Court affirmed the dismissal of the Jones Act suit and concluded that Swanson was relegated to his remedy for compensation under state law.

The Supreme Court decided several cases in the 1940's and 1950's on the question of whether facts in a particular case were sufficient to permit a finding that the employee was a seaman and eligible to claim Jones Act damages.[3] None of the workmen whose status was under consideration in those cases was a longshoreman, ship repairer or other traditional harbor worker; consequently those cases do not assist us in our analysis of today's case.

**3.** *Butler v. Whiteman,* 356 U.S. 271, 78 S.Ct. 734, 2 L.Ed.2d 754 (1958) (laborer). *Grimes v. Raymond Concrete Pile Co.,* 356 U.S. 252, 78 S.Ct. 687, 2 L.Ed.2d 737 (1958) (construction worker engaged in constructing, transporting and installing a radar warning station 110 miles offshore); *Senko v. LaCrosse Dredging Corp.,* 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404 (1957) (crewmember aboard a dredge); *Gianfala v.*

*Texas Co.,* 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 775 (1955) (an oilfield worker employed aboard a submersible drilling barge); *Desper v. Starved Rock Ferry Co.,* 342 U.S. 187, 72 S.Ct. 216, 96 L.Ed. 205 (1952) (crewmember status denied on ground that the vessel was not engaged in navigation); *Norton v. Warner Co.,* 321 U.S. 565, 64 S.Ct. 747, 88 L.Ed. 931 (1944) (a boatman on a barge).

In summary, the efforts of Congress to cover harbor workers before 1927, the language of the 1927 LHWCA, the legislative history of the Act and decisions of the Supreme Court after its enactment reflect who Congress intended to benefit when it adopted the LHWCA: The land-based harbor workers such as longshoremen and ship repairers who were injured on vessels and ineligible to recover state workers' compensation benefits. Congress distinguished seamen or vessel crewmembers from the land-based harbor workers and provided a distinct remedy for them in the Jones Act.

### B. THE 1972 AMENDMENTS TO LHWCA

In 1972, Congress made its first significant amendment to the 1927 Act. In *Director, OWCP v. Perini North River Assoc.*, 459 U.S. 297, 313, 103 S.Ct. 634, 645, 74 L.Ed.2d 465 (1983), the Court explained that the amendments were primarily intended "to raise the amount of compensation available under the LHWCA, to extend coverage of the Act to include certain contiguous land areas, to eliminate the longshoremen's strict-liability seaworthiness remedy against shipowners, to eliminate shipowner's claims for indemnification from stevedores, and to promulgate certain administrative reforms."

The amendment to the definition of employee is the change most relevant to the issue in this case. The definition of "employee" was amended to include "any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker, but such term does not include . . . a master or member of a crew of any vessel; . . ." 33 U.S.C. § 902(3). Given the judicial gloss placed on the 1927 Act, the amendment did not materially change the type of workers entitled to coverage. In *Director, OWCP v. Peri-*

*ni*, 459 U.S. at 315, 103 S.Ct. at 646, the Court held that coverage of employees injured on navigable waters was not reduced or restricted by the 1972 amendments. Significantly the amended Act did, however, *expressly* provide coverage for employees engaged in certain occupations including longshoremen, shipbuilders, ship repairers and ship-breakers. Coverage was also extended to cover injuries occurring not only on navigable waters but also on "any adjoining pier, wharf, dry dock, terminal, building, way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel." 33 U.S.C. § 903(a).

Congress could have hardly made it clearer that it intended to afford complete coverage to employees engaged in the occupations enumerated in the Act so long as the location of the injury met the situs test. So that harbor workers who worked on both vessels and the adjacent dock would not walk in and out of coverage during the course of their work, the benefits of the Act were extended to them while working on land adjacent to the water. See *Northeast Marine Terminal v. Caputo*, 432 U.S. 249, 261, 97 S.Ct. 2348, 2356, 53 L.Ed.2d 320 (1977).

Although the Supreme Court has had occasion to consider the definition of "employee" under the amended Act in several cases,[4] it has not addressed whether an employee engaged in one of the occupations expressly covered by the LHWCA is eligible for Jones Act benefits. Our own cases, however, provide support for the view that a workman engaged in one of these occupations is unqualifiedly covered by the LHWCA and therefore ineligible for benefits under the Jones Act. In *Bouvier v. Krenz*, 702 F.2d 89 (5th Cir.1983), the decedent was employed by Avondale Shipyards as a rigger. Mr. Bouvier's duties consisted primarily of removing machinery

**4.** *Herb's Welding, Inc. v. Gray*, 470 U.S. 414, 105 S.Ct. 1421, 84 L.Ed.2d 406 (1985); *Director, OWCP v. Perini North River Assoc.*, 459 U.S. 297, 103 S.Ct. 634, 74 L.Ed.2d 465 (1983); *Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980); *P.C. Pfeiffer Co. v. Ford*, 444 U.S. 69, 100 S.Ct. 328, 62 L.Ed.2d 225 (1979); *Northeast Marine Terminal Co. v. Caputo*, 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977).

from vessels to be taken ashore for repair and then reinstalling the repaired machinery. We held that Bouvier's relationship to the vessels on which he worked was not sufficiently continuous or substantial to permit a jury to find seaman status. Alternatively, we stated that even if the relationship to the group of vessels had been substantial, "nevertheless Bouvier's work as a shore-bound ship repairman working for a shipyard does not make him a Jones Act seaman.... We observe also that the Longshoremen's and Harbor Workers' Compensation Act specifically covers 'any harborworker, including a ship repairman [or] shipbuilder ... [but not] a master or member of a crew of any vessel.... The language of the LHWCA thus strongly supports, indeed arguably demands, the conclusion that a harbor-bound ship repairman is as a matter of law not a 'member of a crew' and thus not a Jones Act seaman." *Id.* at 91.

In *Balfer v. Mayronne Mud & Chemical Co.,* 762 F.2d 432 (5th Cir.1985), Balfer was employed to load sacks of chemicals aboard barges and other vessels at his employer's dock. We affirmed the district court's summary judgment in favor of the employer and held that Balfer's exclusive remedy was under the LHWCA. We stated: "Viewing the record in the light most favorable to Balfer, it is manifestly clear that Balfer was a longshoreman and not a seaman." See also *Buras v. Commercial Testing & Engineering Co.,* 736 F.2d 307 (5th Cir.1984); *Thomas v. Peterson Marine Service, Inc.,* 411 F.2d 592 (5th Cir.1969). Although we have on occasion analyzed the question of whether an employee engaged in longshoring or ship repairing was a member of the crew of a vessel under the *Robison* test [5] we are persuaded that such an analysis is unnecessary if the employee is engaged in an occupation expressly enumerated in the Act.

### C. CONCLUSION

█ The 1927 LHWCA, in effect, amended the Jones Act to make Jones Act bene-fits available only to maritime workers not covered by the LHWCA. Harbor workers engaged in occupations such as longshoring, shipbuilding and ship repairing, who were injured on navigable water, were the intended beneficiaries of the 1927 Act. The LHWCA as amended in 1972 expressly covered workmen engaged in these occupations. In 1972, coverage of these workmen's activities was extended beyond navigable water to cover their injuries on adjacent landbased work locations. Given the explicit coverage of workmen engaged in the enumerated occupations, we reject the notion that Congress could have intended to exclude them from the benefits of the LHWCA as members of the crew of a vessel. In sum, we hold that because longshoremen, shipbuilders and ship repairers are engaged in occupations enumerated in the LHWCA, they are unqualifiedly covered by that Act if they meet the Act's situs requirements; coverage of these workmen by the LHWCA renders them ineligible for consideration as seamen or members of the crew of a vessel entitled to claim the benefits of the Jones Act.

The only work Pizzitolo performed aboard vessels was electrical repair work. Even if he spent a substantial portion of his work time aboard a recognized fleet of vessels performing electrical repairs, for reasons stated above he is covered by the LHWCA and cannot qualify as a seaman within the meaning of the Jones Act.

AFFIRMED.

---

5. *See, e.g., Jones v. Mississippi River Grain Elevator Co.,* 703 F.2d 108 (5th Cir.1983); *Stokes v. B.T. Oilfield Services, Inc.,* 617 F.2d 1205 (5th Cir.1980); *Burns v. Anchor-Wate Co.,* 469 F.2d 730 (5th Cir.1972).