CIACCIO, Judge.
In this Jones Act (46 U.S.C. 688) case plaintiff appeals a summary judgment denying her “seaman” status. We affirm.
While summary judgment on seaman status in Jones Act cases is rarely proper, and even in marginal cases should go to the jury, it is in some circumstances possible to rule as a matter of law that a worker is not a seaman. Bouvier v. Krenz, 702 F.2d 89, at 90 (5th Cir.1983), and cases cited therein; cf. Pizzitolo v. Electro-Cool Transfer Corp., 812 F.2d 977 (5th Cir.1987), where the appeals court affirmed the district court’s decision on the issue as a matter of law in rendering a judgment notwithstanding the verdict. As relates to her duties, the facts of plaintiff’s occupation are not in dispute; unlike Burrle v. Intern. Marine Terminals, 485 So.2d 1006 (La.App. 4th Cir.1986) which is heavily relied upon by plaintiff. The only question is whether those facts conclusively establish that as a matter of law she is not a seaman.
*5 The current test within this circuit for determining seaman status is derived from Offshore Company v. Robison, 266 F.2d 769 (5th Cir.1959), as perpetuated by Barrett v. Chevron, U.S.A., Inc., 781 F.2d 1067, 1069 (5th Cir.1986): (1) was the worker permanently assigned or did a substantial portion of his work on a vessel or a fleet of vessels, and (2) did his work contribute to the function of the vessel, the accomplishment of its mission, or its operation or welfare, in terms of maintenance during its movement or during anchorage for future trips. The voluminous jurisprudence constantly cautions against mechanical application of the test, recognizing that it is a guideline to be used in light of the historical background of the enactment of the Jones Act and the LHWCA (33 U.S.C. §§ 901-950), and the jurisprudential practice of liberal construction through which the issues have evolved and developed. See Pizzitolo, Barrett, Bouvier, and Robi-son, all supra.
Coverage under the Jones Act and LHWCA are mutually exclusive. Piz-zitolo, supra. The LHWCA limits the broad term “seaman” so that only “member[s] of a crew of a vessel” are exempted and permitted to be covered by the Jones Act. Barrett, supra. Congress distinguished seamen or vessel crewmembers from the land-based harbor workers and provided a distinct remedy for them in the Jones Act. Pizzitolo, supra.
Plaintiff was employed by defendant Contifleeting, Inc. Contifleeting, Inc. is a fleeting service which holds river barges in a holding area pending their loading, unloading, or transportation elsewhere. The five river tug boats owned by Contifleeting, Inc. were used to move the barges in and out of the fleeting facilities.
Plaintiff's primary duties were to obtain supplies, groceries, parts, tools, etcetera, to be used for the maintenance or performance of the work of the tug boats and their crews. Plaintiff would deliver and store these items aboard the tug boats or in the storage locker of the M/V MARK TWAIN, a permanently moored, decommissioned steamboat owned by defendant. In the company van she used to pick up the items she was instructed to obtain, plaintiff occasionally drove company personnel to various locations for their work aboard company vessels.
Plaintiff made her deliveries to the tugs while they were moored alongside the MARK TWAIN. It was not part of her duties to be aboard any vessel as it went about its work. Only once, and then by accident, was she aboard a vessel in motion.
Plaintiff was injured while moving a partially filled accetylene bottle from one of the tugs across the deck of the MARK TWAIN to a panel truck.
The trial court found as follows:
Plaintiff was assigned to the M/V MARK TWAIN, which had been removed from navigation. It is not a vessel for purposes of the Jones Act or General Maritime Law. Plaintiffs duties included delivering groceries and other supplies to a fleet of tugs owned by Conti-fleeting. She had no work assignments on these vessels and her contact with them was limited to deliveries.
Plaintiffs activities do not constitute a contribution to the mission or function of the vessels in the sense required by law. In viewing her entire work assignment, her time aboard the vessels was minimal and she is not entitled to claim seaman status.
We agree that the total circumstances of plaintiffs employment and her relationship to the vessels does not establish a sufficient nexus with the navigation of vessels and the perils attendant thereon to implicate the concerns of the Jones Act. Bouvier, supra. We recognize that Barrett rejected the argument that the Robison test improperly omits a “navigation” element, and that Jones Act seamen such as Robison are in many instances exposed to more hazards than are blue-water sailors, Robison 266 F.2d at 780. Nevertheless, considering the historical, jurisprudential, and legislative distinction between land-based harbor workers and seamen or vessel crew-members, we find the Bouvier nexus, al *6 though admittedly inexact, to be critical in determining seaman status in a case such as this one.
Plaintiff was a land-based employee who boarded the tugs only when moored and only to deliver supplies or to remove items in need of repair or replacement. Other than delivering the supplies by appropriately storing them on board and other tasks incident thereto, plaintiff had no shipboard duties. Although her duties contributed incidentally to the operation of the fleet, as would work of any land-based supplier, her employment was not as a member of the crew so that she contributed directly to the function of the vessels, the accomplishment of their missions, or their operation or welfare. Plaintiff was not a member of the crew of any one or the entire fleet of tug boats. She was not employed as a seaman, nor working in a seaman capacity at the time of her injury. She was a land-based worker carrying supplies to the tugs. She did not become a seaman because she crossed the gang plank and boarded the moored vessels rather than leaving the items delivered or receiving the items in need of repair or replacement at the edge of the dock. She surely did not walk in and out of coverage, changing status, as she walked back and forth between the momentarily moored tugs and the permanently moored MARK TWAIN and land. Her relationship with the tugs, their functions, missions, operation and welfare — although perhaps regular, even periodic — was transitory at best in comparison with the relationship of a seaman or member of the crew.
Accordingly we affirm the judgment of the district court.
AFFIRMED.