Jerry REEVES

v.

SURVEY BOATS, INC., M/V OCEAN SURVEYOR and Travelers Insurance Co.

Civ. A. No. 88–0793 "L".

United States District Court, W.D. Louisiana, Lafayette–Opelousas Division.

Oct. 11, 1989.

---

**8.** 525 So.2d at 347–48.

**9.** 525 So.2d at 347, n. 3.

**10.** *Id.* at 347.

**11.** Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq.

Harold J. Rhodes, Morgan City, La., for plaintiff.

John Blackwell, New Iberia, La., for defendants.

## MEMORANDUM RULING MOTION FOR SUMMARY JUDGMENT

EDWIN F. HUNTER, Jr., Senior District Judge.

Jerry Reeves ("Reeves") an employee of Survey Boats, Inc. ("Survey") commenced this action under the Jones Act and General Maritime Law alleging that he was a seaman, and that on the 28th day of May, 1985 he sustained personal injuries when he slipped and fell on defendant's vessel the M/V Ocean Surveyor which he had boarded for the express purpose of making repairs. On 14 September, 1988, Reeves with his wife joining in filed an amended complaint alleging that additionally on the 4th of August, 1983 he sustained an injury to his back which was concealed from him by Survey Boats. Survey Boats and its insurer answered pleading that Reeves' exclusive remedy was under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. Sec. 901, et seq., ("LHWCA") and further as to the accident which occurred in 1983, that the claim was time barred.

■ Defendants through the motion for summary judgment argue that the depositions and exhibits reveal that as a matter of law Reeves was engaged in the occupation of ship repairer which is covered by the LHWCA. We are persuaded that they are correct.

Survey Boats operated eleven (11) vessels during the period of Reeves' employment. These boats were normally chartered to John E. Chance & Associates for offshore survey work. Each boat was crewed with a captain, engineer/wheelman, and deckhand. The boat's engineer who always rode the boat on voyages was responsible for routine maintenance and upkeep of the boat's engine and equipment. Survey Boats employed Reeves as Port Engineer, a sort of "super mechanic", to perform and take care of the major repairs on the boats which could not be done by the boat's engineer. This caused Reeves to visit the boats quite often but except on rare occasions, only in his capacity as a "ship repairer", i.e. mechanic.

Filed as an exhibit in support of the motion for summary judgment is a letter signed by Reeves in which he described his job as follows:

"My duties as Port Engineer are to be in charge of all mechanical parts and tools, and running hours on engines. Also, I am responsible for mechanical repairs on boats and carryalls, and to cut and weld. I am to inform as to when an engine should be overhauled, and to assist in any way the work of Survey Boats, Inc. and answer to Mr. Bailey whenever necessary."

Reeves was employed by Survey from 1980 through 1985. He was hired as a port engineer because of his expertise in mechanics to do mechanical repairs on Survey Boat's vessels. (Deposition of Reeves, Pages 32–34). Each boat had its own engineer who was expected to do the normal and routine maintenance. (Plaintiff's deposition, Page 35). Reeves did all the major overhauls on the boat's engines or hired others to do this work. (Plaintiff's deposition, Page 36). During the entire period of time his duties did not change. (Plaintiff's deposition, Page 36). Reeves was provided a company vehicle. (Plaintiff's deposition, Page 38). On a typical day he reported to

the office in Patterson where he did paperwork at his desk for a brief period of time. (Plaintiff's deposition, Page 39). He would then drive to one or more ports with the intention of doing some specific repair on a boat or to do an inspection. (Plaintiff's deposition, Page 41). Normally, when he left the office he would know what mechanical work he was to do on the boat and would carry with him the parts necessary to do the repairs. (Plaintiff's deposition, Page 41). He would be informed by the boat's engineer what the nature of the problem was and he would know what repair work he was to do. (Plaintiff's deposition, Page 42). During the entire period of time that he was employed by Survey Boats from 1980 through 1985 (Plaintiff's deposition, Page 44) he only made two voyages on boats for a period of two to three days each (Plaintiff's deposition, Pages 45–47) and the remainder of the time he was on boats, that were at dock or undergoing sea trials after repairs. (Plaintiff's deposition, Page 45). After his repair work, he would disembark from the boat and go to the next boat which needed repair. He would travel by truck between assignments. (Plaintiff's deposition, Page 47). He never replaced or worked as a boat's engineer except for a day and a half when he was on a new boat checking it out and this was more in the nature of a sea trial. (Plaintiff's deposition, Page 48–49).

On the date of his accident, Reeves boarded the M/V OCEAN SURVEYOR to install a new type of fuel filter. (Plaintiff's deposition, Page 50). He slipped and fell because of diesel oil on the deck. The boat's engineer Richard Reeves, plaintiff's son, had been cleaning an air breather with diesel fuel. Some of the fuel is alleged to have run or been blown on the deck during the cleaning process.

Reeves' work was described by Marion Trahan who was employed by Survey Boats as Port Captain. (Trahan's deposition, Pages 5–6). Trahan confirmed that Reeves never worked as captain, was never

the pilot of a boat and never served as a member of the crew of a vessel. (Trahan's deposition, Pages 38–39).

Reeves' son, who was a boat's engineer, testified that his father's duties were to do extraordinary repairs to the boats. (Deposition of Richard Reeves, Page 30). He noted that on the day of the accident, his father was on the vessel for the purpose of making major repairs on the engine.

This evidence leads inevitably to the conclusion that Reeves was a ship repairer. In *Pizzitolo v. Electro–Coal Transfer Corporation*, 812 F.2d 977, (1987), the Fifth Circuit wrought a fundamental change in its analysis for determining Jones Act status. The court held that the first inquiry was whether the injured worker was engaged in an occupation covered by the LHWCA and that only in the event that the worker did not fall within one of those enumerated occupations was the *Robison/Barrett*[1] analysis to be performed.

■ We readily concede that Reeves meets many of the traditional criteria used in the *Robison* test. However, it was clearly held in *Pizzitolo* that workers are "unqualifiedly covered by that act (LHWCA) if they meet the Act's situs requirements; and coverage of these workmen by the LHWCA renders them ineligible for consideration as seamen or members of the crew of a vessel entitled to claim the benefits of the Jones Act", *Ibid*, Page 983. If a worker is engaged in one of the enumerated occupations included within coverage, then they are automatically excluded from seamen's coverage and are ineligible even if they could meet the traditional *Robison/Barrett* criteria.

The text of the LHWCA, 33 U.S.C. Sec. 901, et seq., Section 902(3) provides in pertinent part that:

"The term 'employee' means any person engaged in maritime employment, including any longshoremen or other person engaged in longshoring operations, and any harbor worker including a ship repairman, shop builder and ship breaker,

---

1. *Offshore Company v. Robison,* 266 F.2d 769 (5th Cir.1959) and *Barrett v. Chevron USA, Inc.,*

781 F.2d 1067 (5th Cir.1986).

but such term does not include ... (G) a master or member of a crew of any vessel ...".

The LHWCA does not define "ship repairer" but *Pizzitolo* suggests that shore based workers who perform repairs on a fleet of vessels are to be considered within this category. Pizzitolo was employed by Electro–Coal which operated a coal terminal consisting of shoreside buildings, a coal storage area, a dock in which it routinely transferred coal from vessel to vessel and between vessels in the shoreside storage area. To facilitate its operations, Electro Coal owned and operated four harbor tugs and a crane barge used to load and unload the barges. Pizzitolo was employed as an electrician who reported to work each morning at a shore based electrical shop where he received his assignment from a foreman. After finishing each assignment he would return to the shop. The 5th Circuit found that he spent approximately 75% of his time maintaining and repairing shore based electrical equipment and the other 25% of his time replacing or repairing electrical equipment on vessels owned by his employer and a sister corporation while those vessels were tied up at the terminal dock. The court after discussing the interplay between the Jones Act and the Longshoremen's and Harbor Workers' Compensation Act turned to the precise issue, that being the circumstances under which the *Robison/Barrett* analysis was necessary. The court concluded that Pizzitolo's claims under the traditional *Robison/Barrett* test was unnecessary because Pizzitolo was employed in an occupation "unqualifiedly covered by the LHWCA and therefore ineligible for benefits under the Jones Act". *Ibid* at 982. The court further held that the *Robison/Barrett* analysis was "unnecessary if the employee is engaged in an occupation expressly enumerated in the Act." *Ibid,* at 983.

Reeves and Pizzitolo were shore base workers whose job required that they perform repairs on vessels in port instead of serving on those vessels during voyages. Pizzitolo spent more time on shore than Reeves but the time Reeves spent on vessels was for the purpose of making repairs.

The pertinent issue is: Was Reeves a ship repairer? We conclude that this inquiry must be answered in the affirmative. He was hired to do mechanical repairs on Survey Boats' fleet of vessels. No conclusion is reasonable under the facts but that he only worked for Survey Boats because of his expertise in making mechanical repairs. He is under any sense of the term a ship repairer. Whether he spent a night or ate meals on vessels is of no consequence. These are all facts which would be relevant only if he was not engaged in an enumerated occupation covered by the LHWCA.

■ The plaintiff's amended complaint asserting a cause of action for an accident which occurred in 1983 is clearly time barred. Both the Jones Act and the General Maritime Law adopt a three year statute of limitations, 46 U.S.C.App. Sec. 688 adopting 45 U.S.C. Sec. 56 and 46 U.S.C. App. Sec. 763a. Both acts provide that actions may not be maintained unless commenced within three years of the date of the accrual of the cause of action. In *Albertson v. T.J. Stevenson & Company, Inc.,* 749 F.2d 223 (5th Cir.1984) the court discussed extensively the question of when a cause of action accrues. Plaintiff's own complaint shows that he had back surgery and the report of Dr. Culicchi shows that the surgery was done more than three years prior to the date of the filing of the amended complaint. Plaintiff pleads that his 1983 injuries were deliberately concealed from him. But, the record reveals that plaintiff underwent surgery, consisting of a partial lumbar hemilaminectomy and doctor's report was available.

We attach and made part hereof what we believe to be undisputed facts. The motion for summary judgment is granted. Counsel for defendant is to submit an appropriate judgment.

STATEMENT OF MATERIAL FACTS

1.

During the years 1980 through 1985, Jerry Reeves was employed by Survey Boats, Inc. as a port engineer.

**2.**

During that period of time, Survey operated a fleet of approximately eleven vessels.

**3.**

These vessels were crewed by a captain, engineer/wheelman, and deckhand who rode the boat during voyages.

**4.**

The duties of the engineer onboard the boat was to perform routine maintenance including changing the oil, cleaning air breathers, etc.

**5.**

The duties of the port engineer Jerry Reeves included major repair on vessels or contracting out major repairs on the vessels such as changing out engines, valve jobs, etc. and performing mechanical inspections on the vessels to determine whether they were in need of repair.

**6.**

Jerry Reeves maintained a desk and his headquarters at the Survey Boats' office in Patterson, Louisiana.

**7.**

On a typical day, Jerry Reeves reported to his office and did paperwork at his desk for a brief period of time and then would drive a company vehicle to various ports including Intercoastal, Fouchon, Venice, Freeport, Texas and Galveston, Texas for the purpose of performing specific repairs on vessels and/or doing routine inspections and when he finished with the repair job he left the vessel for a new assignment.

**8.**

With only several exceptions, Jerry Reeves was onboard vessels only when they were in port tied to a dock while undergoing mechanical repairs or inspections or during sea trials after major repairs had been made.

**9.**

Reeves was not routinely on boats operated by defendant while those boats were engaged in survey work. He was only on boats (with the exception of possibly two or three occasions) when they were undergoing repair or inspection.

**10.**

His duties were to do major repairs when the boat's engineer lacked the expertise to make the repairs himself.

**11.**

Jerry Reeves never functioned as an engineer on defendant's boat with the exception of the two trips to Mexico.

**12.**

Jerry Reeves never operated any of Survey Boats' vessels as a captain or wheelman and he never during the five years he worked for Survey rode the boats while they were working except as previously stated.

**13.**

Plaintiffs' amended complaint alleging a cause of action for an accident occurring on the 4th of August, 1983 was filed on the 14th of September, 1988, more than five years after the date of the alleged incident. Plaintiff was fully aware of his injury, underwent surgery and medical reports were available.

**14.**

Surgery consisting of a partial lumbar hemilaminectomy was performed at West Jefferson General Hospital on November 4, 1983. He returned to work and did so without incident until in 1985.

**15.**

Plaintiff is now receiving and has continually been receiving benefits under the LHWCA of approximately $1,800 a month. This figure is not precise.

### JONES ACT V. LHWCA

Able, articulate and dedicated counsel for Reeves argues that the "Robison" revolution was aided by "Texas Oil Barons" who had grown weary of Jones Act Coverage for offshore maritime workers. He argues that seamen are wards of the court "and the courts must protect these people as they have done since Lord Campbell's Act in 1682."

This court is not able to predict whether this plaintiff would benefit more from Jones Act or LHWCA Coverage. During

the writers 35 years on the bench, we have noted jury verdicts in favor of Jones Act Coverage accompanied by findings of no liability or extreme contributory negligence. The result is self evident.

Counsel for defendant has this to say:

In general, the relief afforded under the LHWCA is more certain and less expensive than tort actions and also provides rehabilitation to the injured worker so that he can again become a productive member of society. *Bludworth Shipyard, Inc. v. Lira,* 700 F.2d 1046, 1051 (5th Cir.1983); see also *New Orleans (Gulf Wide) Stevedores v. Turner,* 661 F.2d 1031, 1042 (5th Cir.1981). The purpose of the LHWCA is to provide certain and absolute benefits in lieu of common law damages in a form which is both expeditious and independent of proof of fault. *Haynes v. Rederi A/S Aladdin,* 362 F.2d 345, 350 (5th Cir.1966), cert. denied 385 U.S. 1020, 87 S.Ct. 731, 17 L.Ed. [2d] 557).

Logically speaking, if the LHWCA applies to all maritime workers except masters and members of the crew, it would seem the former should be given more liberal application than the latter. Since the remedy provided by the LHWCA is fixed, certain, more expeditious and provides rehabilitation services not available under the Jones Act, it would seem more humane and consonant with public policy that the former be given more liberal application than the latter.

It is apparent that in this case, plaintiff prefers Jones Act Coverage and defendant prefers LHWCA. These two are doing their very best to protect their client's interest. The observations here made are simply to show that "all that glitters is not necessarily gold".