Gus R. LEGROS and Betty Legros,
Plaintiffs–Appellees
Cross–Appellants,

v.

PANTHER SERVICES GROUP, INC.,
et al, Defendants–Appellees,

National Union Fire Insurance Co. of
Pittsburgh, Defendant–Appellant
Cross–Appellee.

No. 87–4370.

United States Court of Appeals,
Fifth Circuit.

Dec. 29, 1988.

Order Granting Rehearing En Banc
Feb. 8, 1989.

**346**

John A. Jeansonne, Jr., Jeansonne & Briney, Lafayette, La., for defendant-appellant cross-appellee.

Terrell D. Fowler, Cox, Cox, Townsley & Fowler, Lake Charles, La., for appellees.

Before WISDOM, RUBIN, and JONES, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The issue is whether the status of a worker found by the district court, on the basis of sufficient evidence, to be a seaman under general maritime law and therefore entitled to maintenance and cure should instead have been determined by first asking whether the worker might have been a harbor worker, and, if the answer were affirmative, concluding that this precluded a finding that he had seaman's status. We conclude that the district court did not err in applying the traditional test of this circuit, set forth in *Offshore Company v. Robison*,[1] for determining seaman's status and that the court was not required initially to consider and reject harbor-worker status.

---

**1.** 266 F.2d 769 (5th Cir.1959), *reaffirmed in Barrett v. Chevron, U.S.A., Inc.,* 781 F.2d 1067, 1072–73 (5th Cir.1986) (en banc).

**I.**

After being hired in February, 1985 by defendant Bengal Marine ("Bengal") to do construction work, Gus R. Legros continued in the employment of Bengal's corporate successor, Panther Services Group, Inc. ("Panther"). These companies operated a group of construction barges on navigable waters in southern Louisiana. At first Legros operated a crane on one of the barges, but later he was assigned to maintain the engines and other equipment on a number of barges.

According to Legros' immediate supervisor, he was basically a construction worker, but Panther had run out of construction work. Not wanting to lose the services of this good worker, Panther assigned him in March, 1985, to do odd jobs on its barges, including chipping, painting, repairing, inspecting, and on occasion moving the vessels around the Panther docks. Legros testified that these various tasks on the barges constituted all of his work, he spent 95 to 97% of his time on water rather than land, and he ate and slept on the vessels except when his work on land required him to be near his home in Krotz Springs, Louisiana, at the end of the day. Other witnesses agreed that Legros ate and slept on the vessels at least some of the time and testified that, after he was reassigned to barge work, his time on land was spent mostly going from one barge job to another.

Legros was eventually assigned to supervise co-workers who were refitting one of the Panther barges, the HILLMAN 3, to convert it from a deck barge to a derrick barge. This job occupied several weeks, during which Legros did no chipping or painting but did do some minor engine repairs. He slept on one of the barges most nights, but went home on the night of May 17, 1985, and perhaps the preceding night. While he was overseeing workers who were welding shut hatches on the HILLMAN 3, on May 18, he fell into an open hatch and injured his back.

Legros sued those he alleged controlled the barge: Michael Hillman, the owner of the barge; Panther; Bengal; and their insurer, National Union Fire Insurance Company ("National Insurance"). He sought maintenance and cure under general maritime law, damages under the Jones Act,[2] and attorney's fees and penalties for the nonpayment of maintenance and cure. The district court granted Legros' motions to sever his maintenance and cure claims from his Jones Act claim and to sever National Insurance from the other defendants. The court also stayed all proceedings against Hillman, Panther, and Bengal, who were bankrupt. The parties then consented to try the maintenance and cure claims against National Insurance before a magistrate.

Applying the two-part test used in this circuit since *Offshore Company v. Robison*[3] to determine "seaman" status under both the Jones Act and general maritime law,[4] the magistrate concluded that Legros was a "seaman" entitled to maintenance and cure because he performed a substantial part of his work aboard an identifiable fleet of vessels and contributed to their functioning and maintenance. The magistrate ruled, however, that because "there were genuine issues of fact and law with respect to plaintiff's status as a seaman and the extent of his injuries," National Insurance was not liable for penalties and attorney's fees for refusing to pay maintenance and cure.

## II.

Nine days after the magistrate's ruling, this court decided *Pizzitolo v. Electro–Coal Transfer Corp.*[5] in which we affirmed a trial court's judgment n.o.v., holding that,

as a matter of law, a harbor-bound employee engaged in an occupation specifically enumerated in the Longshore and Harbor Workers' Compensation Act ("LHWCA")[6] is not a seaman entitled to the benefit of the Jones Act coverage and that a *Robison* analysis, such as the magistrate performed, is therefore unnecessary.[7] National Insurance did not seek rehearing in the district court, but instead appealed, asserting that, as a matter of law, Legros was a ship repairman, hence a longshoreman, and so he cannot be found to be a seaman no matter what his vessel-related duties were, and that, therefore, *Pizzitolo* requires reversal of the judgment.

The LHWCA covers "any harbor-worker including a ship repairman, shipbuilder, and ship-breaker, but such term does not include ... a master or member of a crew of any vessel ..." or a number of other excepted classes of workers such as clerical workers, club employees, and certain marina employees.[8] The term "member of the crew of the vessel" as used in the LHWCA is of course synonymous with the term "seaman" as used in the Jones Act[9] and general maritime law. The issue in *Pizzitolo* was therefore whether the worker was either a seaman/crew member or not, and the fact that the case involved a claim for damages under the Jones Act rather than for maintenance and cure under general maritime law is immaterial.

Pizzitolo, an electrician for a coal terminal, who received his assignments from a shore-based shop, spent 75% of his time repairing shore-based machinery and 25% repairing equipment on vessels tied to the dock. He worked a standard 40–hour week and returned home at the end of each work day. *Pizzitolo* held that the LHWCA and

2. 46 U.S.C.A.App. § 688 (West Supp.1988).

3. 266 F.2d 769 (5th Cir.1959), *reaffirmed in Barrett v. Chevron, U.S.A., Inc.,* 781 F.2d 1067, 1074 (5th Cir.1986) (en banc).

4. *Hall v. Diamond M Co.,* 732 F.2d 1246, 1248 (5th Cir.1984); *Vincent v. Harvey Well Serv.,* 441 F.2d 146 (5th Cir.1971); *Boatel, Inc. v. Delamore,* 379 F.2d 850 (5th Cir.1967); *see also* G. Gilmore and C. Black, The Law of Admiralty § 6–7, at 283 n. 21c (2nd ed. 1975).

5. 812 F.2d 977 (5th Cir.1987).

6. 33 U.S.C. §§ 901–950 (1982).

7. *Pizzitolo,* 812 F.2d at 983.

8. 33 U.S.C. § 902(3).

9. *Bouvier v. Krenz,* 702 F.2d 89, 91 (5th Cir. 1983).

the Jones Act are mutually exclusive, and that because the LHWCA covers shore-based repairmen, Pizzitolo, as a matter of law, was not a seaman.[10]

That the Jones Act and the LHWCA are mutually exclusive is not only evident from the statutory language but is supported by a host of decisions.[11] The issue then is solely the method of determining whether a particular worker is a seaman or a harbor worker. The issue may arise in two fashions: the evidence is so one-sided that status can be determined as a matter of law, or the evidence is so inconclusive that the determination of status becomes a question of fact.

*Pizzitolo* cited our statements in *Bouvier v. Krenz* that a "harbor-bound ship repairman is *as a matter of law* not a 'member of a crew' and thus not a Jones Act seaman"[12] and in *Balfer v. Mayronne Mud & Chemical Company* that *"[v]iewing the record in the light most favorable to Balfer,* it is manifestly clear that Balfer [a shore-based stevedore who worked sporadically on vessels] was a longshoreman and not a seaman."[13] In both *Bouvier* and *Balfer,* however, we had applied the *Robison* test to determine whether summary judgment was appropriate,[14] just as we had in numerous other cases upholding summary judgment against shore-based workers.[15]

Thus, in *Bouvier,* we said, "the term 'master or member of a crew' in the LHWCA has been held to be equivalent of 'seaman' in the Jones Act, *with the Robison test the guide to both* determinations."[16] Similarly, in *Balfer,* we first applied the *Robison* test and determined that Balfer was not a seaman before concluding that he was a longshoreman.

In *Buras v. Commercial Testing & Engineering Co.,*[17] we summed up the requirements for summary judgment denying seaman's status in phrases clearly based on *Robison:*

> to survive a motion for summary judgment the claimant must demonstrate a factual dispute with regard to the permanency *or* the substantiality of his employment relationship with a vessel or group of vessels, *and* that his work contributed to the operation or function of the vessel or the accomplishment of its mission.[18]

In a number of other cases, decided both before[19] and after[20] the adoption of the 1972 amendments to the LHWCA, we have affirmed submission of the status issue to the fact-finder without making non-harbor-worker status a prerequisite. These decisions applied the doctrine followed by this court in *McDermott, Inc. v. Boudreaux,*[21] in which, a decade after adoption of the 1972 amendment, we set aside a decision by the Benefits Review Board that a worker

**10.** 812 F.2d at 983.

**11.** *See, e.g., Buras v. Commercial Testing & Eng'g Co.,* 736 F.2d 307, 309 (5th Cir.1984).

**12.** 702 F.2d 89, 90 (5th Cir.1983) (emphasis added).

**13.** 762 F.2d 432, 434 (5th Cir.1985) (emphasis added).

**14.** *See Id.* at 434; *Bouvier,* 702 F.2d at 90.

**15.** *E.g., Buras v. Commercial Testing & Eng'g Co.,* 736 F.2d 307 (5th Cir.1984); *White v. Valley Line Co.,* 736 F.2d 304 (5th Cir.1984); *Jones v. Mississippi River Grain Elevator Co.,* 703 F.2d 108 (5th Cir.), *cert. denied,* 464 U.S. 856, 104 S.Ct. 175, 78 L.Ed.2d 157 (1983); *Fox v. Taylor Diving & Salvage Co.,* 694 F.2d 1349 (5th Cir. 1983); *Guidry v. Continental Oil Co.,* 640 F.2d 523 (5th Cir.), *cert. denied,* 454 U.S. 818, 102 S.Ct. 96, 70 L.Ed.2d 87 (1981); *Cox v. Otis Eng'g Corp.,* 474 F.2d 613 (5th Cir.1973); *Thomas v. Peterson Marine Serv.,* 411 F.2d 592 (5th Cir. 1969), *cert. denied,* 396 U.S. 1006, 90 S.Ct. 562,

24 L.Ed.2d 499 (1970); *Rotolo v. Halliburton Co.,* 317 F.2d 9 (5th Cir.), *cert. denied,* 375 U.S. 852, 84 S.Ct. 111, 11 L.Ed.2d 79 (1963).

**16.** 702 F.2d at 91 (emphasis added).

**17.** 736 F.2d 307 (5th Cir.1984).

**18.** *Id.* at 310.

**19.** *E.g., Barrios v. Louisiana Constr. Materials Co.,* 465 F.2d 1157 (5th Cir.1972); *Bodden v. Coordinated Caribbean Transp. Inc.,* 369 F.2d 273 (5th Cir.1966); *McKie v. Diamond Marine Co.,* 204 F.2d 132 (5th Cir.1953).

**20.** *E.g., Patton–Tully Transp. Co. v. Ratliff,* 797 F.2d 206 (5th Cir.1986); *Abshire v. Seacoast Prods., Inc.,* 668 F.2d 832 (5th Cir.1982); *Crador v. Louisiana Dept. of Highways,* 625 F.2d 1227 (5th Cir.1980), *cert. denied,* 452 U.S. 915, 101 S.Ct. 3048, 69 L.Ed.2d 417 (1981); *Davis v. Hill Eng'g, Inc.,* 549 F.2d 314 (5th Cir.1977).

**21.** 679 F.2d 452 (5th Cir.1982).

was covered under the LHWCA, finding instead that he was a member of the crew of a vessel, hence outside LHWCA coverage. We explained that the *Robison* test is the standard for reviewing LHWCA and Jones Act determinations:

> Thus, despite our continued insistence that a Jones Act "seaman" and a "crew member" excluded from the Longshoremen's Act are one and the same ... we realize that, in a practical sense, a "zone of uncertainty" inevitably connects the two Acts. Confronted by conflicting evidence concerning a worker's duties or undisputed evidence concerning an occupation that exhibits the characteristics of both traditional land and sea duties, a fact-finder might be able to draw reasonable inferences to justify coverage under *either* statute. Were this possibility present here, we would remand this case for further factual development at the administrative level and reconsideration in light of our emphasis upon *Robison, Jenkins* [*v. Aquatic Contractors and Engineers*, 446 F.2d 520 (5th Cir.1971)], *Doucet* [*v. Wheless Drilling Company*, 467 F.2d 336 (5th Cir.1972)], and other precedent in this Circuit.[22]

Our application of the *Robison* test had therefore been more than occasional.[23] Before *Pizzitolo*, when faced with the question whether an employee was covered under the LHWCA or the Jones Act, our analysis, like that of other circuits,[24] did not focus on the occupations listed in the LHWCA, but on the language of the exception—"member of the crew of a vessel"—and we applied the *Robison* test to determine coverage under the Jones Act or general maritime law. As we explained less than three years ago in *Barrett v. Chevron, U.S.A., Inc.*:

> For over twenty-five years, since 1959, the *Robison* test has stood in this circuit

as the test for whether the [seaman] status question should go to the jury.... It has been cited more than ninety-five times, relied on in innumerable other unpublished circuit and district court opinions, and considered a lighthouse by both plaintiffs' and defendants' counsel in compromise negotiations.[25]

Thus, although the result in *Pizzitolo* was correct because the evidence was insufficient to warrant a finding that Pizzitolo was a seaman, the method of analysis utilized in *Pizzitolo* cannot be reconciled with the method used in our earlier *Robison* line of cases.

■ The dissent argues that by this opinion we overrule *Pizzitolo* and that we should, if we differ with that decision, simply say so and suggest rehearing en banc. We do not overrule *Pizzitolo* but we do refuse to extend it beyond its holding: judgment as a matter of law on seaman status, whether rendered by summary judgment, directed verdict, or judgment n.o.v., is appropriate when the evidence is insufficient to warrant a finding of seaman's status, the rationale applied by the district court whose judgment n.o.v. was affirmed in *Pizzitolo*.

The difference between the two opinions is only with respect to method of analysis. If method of analysis, rather than holding, is what constitutes the law of the circuit, then we agree: "It has long been a rule of this court that no panel of this circuit can overrule a decision previously made by another."[26] That precept, however, applies more aptly to *Pizzitolo* than to this opinion. If the *Pizzitolo* panel believed that this court had not by 1987 grasped the import of the 1972 amendment to the LHWCA and that the method of analysis in such cases should be changed, that panel should have

**22.** *Id.* at 459 (citations omitted).

**23.** *Contra Pizzitolo*, 812 F.2d at 983.

**24.** *See Estate of Wenzel v. Seaward Marine Servs.*, 709 F.2d 1326, 1328 (9th Cir.1983) (ship repairman); *Simko v. C & C Marine Maintenance Co.*, 594 F.2d 960, 964–65 (3d Cir.) (barge repairman and cleaner), *cert. denied*, 444 U.S. 833, 100 S.Ct. 64, 62 L.Ed.2d 42 (1979); *Salgado*

*v. M.J. Rudolph Corp.*, 514 F.2d 750, 755 (2d Cir.1975) (longshoreman); *Slatton v. Martin K. Eby Constr. Co.*, 506 F.2d 505, 509–10 (8th Cir. 1974) (welder), *cert. denied*, 421 U.S. 931, 95 S.Ct. 1657, 44 L.Ed.2d 88 (1975).

**25.** 781 F.2d 1067, 1073 (5th Cir.1986) (en banc).

**26.** *Ryals v. Estelle*, 661 F.2d 904, 906 (5th Cir. 1981).

petitioned for a rehearing en banc. Not having done so, that panel was bound, as we are today, to apply the *Robison* test to determine whether the seaman status question should go to the jury. In any event, when the panels of this circuit have applied different principles in earlier and later cases, and the conflict is later pointed out, we are obliged to follow the earlier line of cases as we do here.

Neither the text nor the legislative history of the 1972 amendment to the LHWCA require this circuit to reconsider its application of the *Robison* test to determine the status of workers who might arguably be either seamen or shore-bound. If the classification of a worker as a shipbuilder, longshoreman, or ship repairman automatically precluded his having seaman's status, it would have been unnecessary for the LHWCA to except either clerical workers or crew members. Patently, the statute contemplates the possibility that some persons who might be "longshoremen" might also be considered crew members. Indeed, the occupational terms used are merely illustrative: the Act applies to "any person engaged in maritime employment" and the term is explained as including, inter alia, "longshoremen" and "any harbor-worker."

Moreover, the legislative history of the 1972 amendment to the Act, in which the illustrative list of occupations was first included, demonstrates no intention to cabin the scope of the term "member of the crew of a vessel." The 1927 Act provided for payment of compensation "in respect of disabilities or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States...." [27] The word "employee" was not further defined except for a provision stating that it "does not include a master or member of a crew of any vessel." [28] The 1972 amendment was intended to extend, not to restrict, the coverage of the Act,[29] which had previously afforded protection only to workers injured on navigable waters, so that it would cover longshoremen, shipbuilders, and ship repairmen injured on land as well.[30] As Gilmore and Black explain, "LHCA has clearly crossed the *Jensen* line and gone ashore." [31] The Senate Committee Report listing the principal purpose of the Act states it is to "extend coverage to protect additional workers." [32]

Congress intended "to permit a uniform compensation system to apply to employees *who would otherwise be covered* by this Act *for part* of their activities." [33] The amendment "expands the coverage of this Act to cover injuries occurring on the contiguous dock area." [34] The situs requirement was expanded to include certain land areas, but Congress intended only to extend coverage to those harbor workers who were covered when they were injured on navigable waters. It was therefore necessary to amend the definition of "employee" to specify the occupations covered when

---

**27.** 44 Stat. 1424 (1927) (current version at 33 U.S.C. § 903(a)); *see* G. Gilmore and C. Black, *supra* n. 4, § 6.49, at 418.

**28.** 44 Stat. 1424 (current version at 33 U.S.C. § 902(3)). The definition also excluded "any person engaged by the master to load or unload or repair any small vessel under eighteen tons net." *Id.*

**29.** *See Director v. Perini North Assocs.*, 459 U.S. 297, 316, 103 S.Ct. 634, 647, 74 L.Ed.2d 465 (1983); *Northeast Marine Terminal Co. v. Caputo*, 432 U.S. 249, 269–70, 97 S.Ct. 2348, 2359–60, 53 L.Ed.2d 320 (1977) (citing S.Rep. No. 1125, 92d Cong. 2d Sess. 13 (1972); H.R.Rep. No. 1441, 92d Cong., 2d Sess. 10 (1972).

**30.** Senate Comm. on Labor and Public Welfare, Longshoremen's and Harbor Workers' Compen-

sation Act Amendments of 1972, S.Rep. No. 1125, 92d Cong., 2d Sess. 2, 12–13 (1972) [hereinafter S.Rep.]; House Comm. on Education and Labor, Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972, H.R.Rep. No. 1441, 92d Cong., 2d. Sess. 10–11 (1972) [hereinafter H.R.Rep.], *reprinted in* 1972 U.S.Code Cong. & Admin.News 4698, 4704–08.

**31.** G. Gilmore and C. Black, *supra* note 4, § 6–50, at 424.

**32.** S.Rep. at 1.

**33.** S.Rep. at 13 (emphasis added); H.R.Rep., *reprinted in* 1972 U.S.Code Cong. & Admin. News 4708 (emphasis added).

**34.** S.Rep. at 2.

maritime workers were injured ashore, thereby including only workers who had always been considered harbor workers. This prevented coverage from expanding to, for example, clerical or administrative workers at shipyards.[35]

The 1972 amendment did not implicate the distinction between harbor workers and seamen. The definition of "employee" was specified in the amendment because the situs requirement was expanded and Congress wanted to limit the expansion, not because Congress desired to constrict the scope of the Jones Act or to change the rules for determining seaman's status. While the 1972 amendment was under consideration, Senator Tower introduced a separate bill, S. 1547, the Marine Petroleum Worker's Compensation Act of 1971, which would have made the LHWCA applicable to workers engaged in maritime extraction operation and would have eliminated the crew-member exception.[36] This bill did not pass. Instead the Congressional reports specifically point out that "a master or a member of a crew" previously excluded under the LHWCA would continue to be excluded under the amendment.[37] Therefore, it is not surprising that the Supreme Court cases on the effect of the 1972 amendment concern the "twilight zone" between LHWCA workers and those covered under state compensation schemes, not between LHWCA workers and Jones Act seamen.[38] Even were we not bound by circuit precedent to follow the traditional *Robison* analysis here, in our opinion, neither the text nor the history of the 1972 amendment supports changing the test traditionally used for distinguishing longshoremen and harbor workers from seamen. Therefore, we see no need to remand the case for further consideration of the result the magistrate reached using the traditional *Robison* analysis.

## III.

■ Because the question of seaman status is a mixed question of law and fact that generally should be left to the trier of fact,[39] we must uphold the magistrate's determination that Legros was a seaman unless it is clearly erroneous,[40] that is unless the facts dictate the conclusion that Legros, while a maritime worker, was not the member of the crew of a vessel.

■ The magistrate found that Legros satisfied both parts of the *Robison* test: (1) he was assigned permanently to a vessel or performed a substantial part of his work on a vessel or an identifiable group of vessels acting together or under one party's control; and (2) the work he performed contributed to the function of the vessel or group, the accomplishment of its mission, or the operation or welfare of the vessel or group in terms of its maintenance during either movement or anchorage.[41] National Insurance challenges these findings, arguing that Legros, as "a classic longshoring ship-repairman," spent a substantial portion of his working time on land and had only a "tenuous" connection with the

**35.** *Id.; see also Director v. Perini North River Assocs.,* 459 U.S. 297, 313–25, 103 S.Ct. 634, 645–51, 74 L.Ed.2d 465 (1983); *Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 261–65, 97 S.Ct. 2348, 2356–57, 53 L.Ed.2d 320 (1977).

**36.** Subcommittee on Labor, 92d Cong., 2d Sess., Legislative History of the Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972, at 408 (Comm.Print 1972) (excerpt from the Cong.Rec., Senate, Apr. 15, 1971).

**37.** *See* H.R.Rep., *reprinted in* 1972 U.S.Code Cong. & Admin.News 4711; *see also* S.Rep. at 16.

**38.** *See Herb's Welding, Inc. v. Gray,* 470 U.S. 414, 418, 105 S.Ct. 1421, 1425, 84 L.Ed.2d 406 (1985);

*Director v. Perini North River Assocs.,* 459 U.S. 297, 305–24, 103 S.Ct. 634, 641–51, 74 L.Ed.2d 465 (1983); *P.C. Pfeiffer Co. v. Ford,* 444 U.S. 69, 100 S.Ct. 328, 62 L.Ed.2d 225 (1979); *Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977).

**39.** *Hall v. Diamond M Co.,* 732 F.2d 1246, 1248 (5th Cir.1984); *Holland v. Allied Structural Steel Co.,* 539 F.2d 476, 479 (5th Cir.1976), *cert. denied,* 429 U.S. 1105, 97 S.Ct. 1136, 51 L.Ed.2d 557 (1977).

**40.** *See* Fed.R.Civ.P. 52(a).

**41.** *See Robison,* 266 F.2d at 779; *Barrett,* 781 F.2d at 1074.

barges' functions, mission, or welfare and maintenance.

As in *Leonard*, whether Legros was "harbor-bound" was disputed and the evidence was sufficient to support the conclusion that he was not. While National Insurance contended that Legros spent only 16 percent of his time aboard the barges, Legros testified that he had spent 95 percent of his time working on navigable waters. The magistrate concluded that "the truth lies somewhere between the two contentions" but that Legros spent "most" of his time working on vessels on navigable waters. No evidence in the record renders that finding clearly erroneous.

 Legros did work on the barges while they were moored, but they were being prepared to travel elsewhere on navigable waters to a drilling site. A vessel may be "in navigation," and the plaintiff working on it a seaman rather than a harbor-worker, "although [the vessel is] moored to a pier, in a repair yard for periodic repairs, or temporarily attached to some object."[42] The parties agree that Legros sometimes, if not always, ate and slept on a Panther vessel. In addition, Legros' work refitting and occasionally moving the barges contributed to their functioning, while his various maintenance tasks clearly contributed to the barges' "operation or welfare ... in terms of [their] maintenance" during movement or anchorage.[43] Thus, as in *Abshire v. Seacoast Products, Inc.*,[44] in which the plaintiff, a repairman, claimed he worked mostly aboard vessels while the defendants argued he was shore-based, the issue of Legros's seaman status was for the trier of fact.[45]

## IV.

 The magistrate's denial of penalties and fees to Legros for National Insurance's failure to pay maintenance and cure is also supported by the record. Such an award is proper only when a company's refusal to pay is callous and recalcitrant, arbitrary and capricious, or willful, callous, and persistent.[46] The shipowner must have refused to pay without a reasonable defense and exhibited callousness and indifference to the seaman's plight.[47] The magistrate's finding on the quality of the insurer's refusal to pay is primarily factual and therefore should be reversed only if it is clearly erroneous.[48] As our discussion above indicates, Legros was not the quintessential "blue water" seaman obviously entitled to maintenance and cure.

For these reasons, the judgment is AFFIRMED.

EDITH H. JONES, Circuit Judge, dissenting:

I respectfully dissent. The majority have, in my view, not only decided this case incorrectly but have inexplicably gone out of their way to overrule a prior controlling opinion of this court. They have thus confused an area of law that our earlier opinion *Pizzitolo v. Electro–Coal Transfer Corp.*, 812 F.2d 977 (5th Cir.1987), sought to clarify.

The issue here is whether a would-be offshore construction worker, who spent the bulk of his employment with the defendants repairing barges after Louisiana offshore drilling declined, can transform himself into a seaman. By so doing, he can avail himself of a Jones Act remedy for his injury rather than that explicitly provided to shipbuilders and ship repairmen under the Longshore and Harbor Workers' Compensation Act (LHWCA). In *Pizzitolo*, we acknowledged, and the majority purport to

**42.** *McDermott, Inc. v. Boudreaux*, 679 F.2d 452, 455 (5th Cir.1982) (citations omitted).

**43.** *See Robison*, 266 F.2d at 779; *cf. Coulter v. Texaco, Inc.*, 714 F.2d 467, 469 (5th Cir.1983); *Davis v. Hill Eng'g, Inc.*, 549 F.2d 314, 328 (5th Cir.1977).

**44.** 668 F.2d 832 (5th Cir.1982).

**45.** *Id.* at 837.

**46.** *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir.1987); *McWilliams v. Texaco, Inc.*, 781 F.2d 514, 518–19 (5th Cir.1986).

**47.** *Morales*, 829 F.2d at 1358.

**48.** *Breese v. AWI, Inc.*, 823 F.2d 100, 103 (5th Cir.1987).

agree, that ship repairers and harbor workers covered exclusively under the LHWCA may not take advantage of the Jones Act seaman's remedy. Coverage by these statutes is mutually exclusive. *Pizzitolo*, 812 F.2d at 979; *see also Balfer v. Mayronne Mud & Chemical Co.*, 762 F.2d 432 (5th Cir.1985); *Bouvier v. Krenz*, 702 F.2d 89 (5th Cir.1983).

The majority, however, go on to "refuse to extend [*Pizzitolo*] beyond its holding." Their euphemism is transparent. They contend that the *Robison*[1] analysis must be applied to determine whether a plaintiff is covered by the LHWCA rather than the Jones Act or maritime law. *Pizzitolo* clearly disagrees:

> Because coverage under the Jones Act and the LHWCA is mutually exclusive, this argument [that *Robison* must be applied] assumes that Pizzitolo is not covered by the LHWCA. For reasons that follow, we conclude that this premise cannot stand; Pizzitolo is covered by the LHWCA and is not a member of the crew of a vessel.

812 F.2d at 979. The majority may claim to be harmonizing *Pizzitolo* with *Robison;* if so, they have struck the wrong chord.

The majority read the applicable statute differently than *Pizzitolo*, for they contend that the 1972 amendments to the LHWCA "did not implicate the distinction between harbor workers and seamen." They go on to say, "Neither the text nor the history of the 1972 amendment to the LHWCA require this circuit to reconsider its application of the *Robison* test to determine the status of workers who might arguably be either seamen or shore-bound." *Pizzitolo*, however, described the 1972 amendment as *expressly* provid[ing] coverage for employees engaged in certain occupations including longshoremen, shipbuilders, ship repairers and ship-breakers.... Congress could hardly have made it clearer that it intended to afford complete coverage to employees engaged in the occupations enumerated in the Act so long as the location of the injury met the situs test.... Given the explicit cover-

age of workmen engaged in the enumerated occupations, we reject the notion that Congress could have intended to exclude them from the benefits of the LHWCA as members of the crew of a vessel.

812 F.2d at 982–83 (emphasis added).

Finally, the majority conclude that *Pizzitolo* may only be applied where as a matter of law, whether by summary judgment or judgment n.o.v., a plaintiff cannot prove himself a seaman according to the *Robison* test. *Pizzitolo* said precisely the opposite:

> In sum, we hold that because longshoremen, shipbuilders and ship repairers are engaged in occupations enumerated in the LHWCA, they are unqualifiedly covered by that Act if they meet the Act's situs requirements; coverage of these workmen by the LHWCA renders them ineligible for consideration as seamen or members of the crew of a vessel entitled to claim the benefits of the Jones Act.

The conflict between the majority's holding and the rationale of *Pizzitolo* could hardly be more pronounced. As a matter of circuit law, their approach is incorrect, indeed extraordinary. One panel of our court is not authorized to construe another panel's opinion in a way deliberately eschewed by the prior panel. If a panel majority seriously disagrees with a prior decision or finds it in irreconcilable conflict with other circuit authority, the panel must urge en banc reconsideration. Fed.R.App.Proc. 35. *See, e.g., Johnson v. Moral*, 843 F.2d 846 (5th Cir.), *reh'g en banc granted*, 843 F.2d 849 (1988). Not to follow this established procedure breaches the integrity of our circuit's law.

The majority decline to request an *en banc* ruling based on their conclusion that *Pizzitolo* conflicts with earlier decisions of our court and, as a rogue precedent, cannot be followed. I disagree with this characterization for two reasons. First, *Pizzitolo* has not been perceived by subsequent panels of our court as creating an intra-circuit conflict, and it has been followed and ap-

---

**1.** *Offshore Co. v. Robison,* 266 F.2d 769 (5th Cir.1959).

plied in at least three published opinions.[2] Second, although some pre-*Pizzitolo* cases, cited by the majority, applied *Robison* to distinguish between workers covered by LHWCA and seamen, none of those cases undertook to analyze *Robison*'s potential shortcomings for this task, and most of them reached a result consistent with *Pizzitolo*.

If, despite *Pizzitolo*, we were free to address *de novo* the proper method for distinguishing workers covered by the LHWCA from seamen, I would disagree with the result reached by the majority. *Robison* is overinclusive as regards harbor-based workers. *Barrett v. Chevron U.S.A., Inc.*, 781 F.2d 1067, 1072–74 (5th Cir.1986) (en banc). The majority's reliance upon the magistrate's fact-findings in light of *Robison* demonstrates this problem. They acknowledge that Legros "did work on the barges while they were moored, but *they were being prepared* to travel elsewhere on navigable waters.... Legros' work *refitting* and occasionally *moving* the barges contributed to their functioning, while his various *maintenance* tasks clearly contributed to the barges' 'operation or welfare.' " The record indicates that Legros's precise work included removing and installing equipment, chipping, painting, swabbing the decks and occasionally piloting the barges around the docks. Such duties may satisfy the *Robison* test for a maritime worker who is not a harbor-worker, but they may also be performed by a shore-based shipbuilder or ship repairer, like Legros, who never set foot on a voyage while employed by the defendants. Because Legros performed all the jobs enumerated by the majority while the barges were moored; because he never embarked on them for a voyage; and because he ate or slept on the vessels fortuitously as they were tied up at the docks (after he had driven too far from home on a given day to return conveniently), he, like Pizzitolo, is basically a harbor-worker as defined by the LHWCA.

*Pizzitolo*, echoing the command of Congress, forbids transforming a shipbuilder, ship repairer or ship-breaker into a seaman by selectively characterizing his duties. It was not *Pizzitolo* but Congress which determined that harbor workers should receive a different mode of workmen's compensation than seamen. It does not fulfill Congressional intent to hold, with the majority, that only if one does not fulfill the *Robison* test of seaman status is he relegated to the LHWCA. The objectives of *Pizzitolo* and Congress are accomplished by considering first whether the employee is a harbor-based employee covered by the LHWCA. *See Williams v. Weber Management Services, Inc.*, 839 F.2d 1039, 1040 (5th Cir.1987). If the harbor-based activities are interspersed with duties away from the harbor, however, the seagoing duties may be sufficient to present an issue of fact as to which compensation scheme applies. The effect of *Pizzitolo* is not to force seamen into the compensation program provided for harbor-workers, but to prevent harbor-workers from always asserting seamen's status. By the same token, *Pizzitolo* protects the right of harbor-workers to the LHWCA compensation scheme specifically afforded by Congress.

Analyzing whether Legros was a seagoing or harbor-based worker, as *Pizzitolo* requires, the result is at odds with the majority's conclusion that he is a "seaman." Legros described himself in his testimony as basically a repairman and supervisor. He acknowledged that although he piloted boats or barges for Panther on occasion, such occasions occurred very irregularly and were not part of his permanent job. Most of the time, he was inspecting and repairing, and all but one or two of the barges he worked on were tied at the dock. His time and gasoline records reflect considerable onshore effort simply travelling among the Louisiana coastal towns where Panther barges required repair or specialized fitting.

In sum, the majority have no warrant to confine to its facts, in effect to overrule, a prior opinion of our court. Applying *Pizzitolo* in this case, as we must do, I would reject Legros's claims to be a seaman and

**2.** *Thibodeaux v. Torch, Inc.*, 858 F.2d 1048 (5th Cir.1988); *Williams v. Weber Management Services, Inc.*, 839 F.2d 1039, 1040 (5th Cir.1987); *Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291 (5th Cir.1987).

Our court stated in *Leonard:*

*Following the Pizzitolo analysis,* the traditional tests for seaman status become 'unnecessary' only when the 'employee is engaged in an occupation expressly enumerated in the [Longshore and Harbor Workers' Compensation] Act.'
828 F.2d at 296 (emphasis added).

would remit him to LHWCA compensation coverage, which is unquestionably available.

I therefore respectfully dissent.

## ON SUGGESTION FOR REHEARING EN BANC

Before CLARK, Chief Judge, GEE, RUBIN, REAVLEY, POLITZ, KING, JOHNSON, WILLIAMS, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, and DUHE, Circuit Judges.

BY THE COURT:

A member of the Court in active service having requested a poll on the suggestion for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that this cause shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.

In addition to briefing the issues raised by the parties and the panel opinion, the Court instructs that counsel also discuss whether this circuit should adopt a navigational-function test of seaman status in addition to or substitution for the *Robison* standard. *See, e.g., Simko v. C & C Marine Maintenance Co.,* 594 F.2d 960, 964 (3rd Cir.1979).