Lazar **PIERRE**

v.

**PONTCHARTRAIN DREDGING CORPORATION.**

Civ. A. No. 87–2082.

United States District Court, E.D. Louisiana.

May 23, 1989.

Denise Vinet, Vinet & Vinet, Baton Rouge, La., for plaintiff.

John R. Peters, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for defendants Pontchartrain Dredging Corp.

HEEBE, Chief Judge.

This cause came on for hearing on the motions of defendant, Pontchartrain Dredging Corporation ("Pontchartrain") for summary judgment and judgment notwithstanding the verdict.

The Court, after considering the record, the memoranda submitted by the parties, and the arguments of counsel, is now fully advised in the premises and ready to rule. Accordingly,

IT IS THE ORDER OF THE COURT that the motion of defendant, Pontchartrain, for summary judgment be, and the same is hereby, DENIED.

IT IS FURTHER THE ORDER OF THE COURT that the motion of defendant, Pontchartrain, for judgment notwithstanding the verdict be, and the same is hereby, DENIED.

### REASONS

On September 12, 1988 a bifurcated jury trial was held in this Court to determine whether the plaintiff, Mr. Lazar Pierre, was a seaman under the Jones Act, 46 U.S.C. § 688, in the course of his employment with the defendant, Pontchartrain. The aforementioned jury found that Mr. Pierre was a seaman under the Jones Act.[1]

Pontchartrain has filed post-trial motions, which are the subject of this order, for summary judgment and judgment notwithstanding the verdict. The basis of these motions is Pontchartrain's contention that plaintiff is prohibited as a matter of law from recovering damages for his alleged injuries under the Jones Act, since his duties as Pontchartrain's employee classified him as a longshoreman. Pontchartrain argues that as a longshoreman, an occupation specifically enumerated in Section 2(3) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 et seq., Mr. Pierre's only remedies are, therefore, limited to those provided under the LHWCA and do not include those provided under the Jones Act. Pontchartrain bases this argument on the decision of the United States Court of Appeals for the Fifth Circuit in *Pizzitolo v. Electro–Coal Transfer Corp.*, 812 F.2d 977 (5th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1013, 98 L.Ed.2d 978 (1988).

For the following reasons the Court does not agree with Pontchartrain's *Pizzitolo*-based argument. First, Pontchartrain's reliance on *Pizzitolo* is misplaced. Second, *Pizzitolo* was recently implicitly overruled in *Legros v. Panther Services Group, Inc.*, 863 F.2d 345 (5th Cir.1988), *rehearing granted*, (1989) (*en banc*), *appeal dismissed*, 874 F.2d 953 (5th Cir.1989). The Court will now explain these reasons more fully.

*Pizzitolo* involved an electrician, Mr. Pizzitolo, employed by Electro–Coal Transfer Corporation ("Electro–Coal") for whom he worked a standard forty-hour week. Mr. Pizzitolo would arrive in the morning for work at Electro–Coal's Davant, Louisiana facility and would initially report to the store-based electrical shop where he would receive a work assignment. Upon completing one assignment, Mr. Pizzitolo would return to the shore-based workshop and be assigned a new work project.

> [Mr.] Pizzitolo spent approximately 75% of his work time maintaining and repairing the shore-based electrical machinery. The other 25% of his work time was spent replacing or repairing electrical equipment on vessels owned by Electro–Coal and its sister company while the vessels were tied up at the terminal dock.

*Pizzitolo*, 812 F.2d at 979.

After the trial as to plaintiff's status, the jury found that "Pizzitolo was a seaman and thus eligible to recover damages under the Jones Act.... The district court disagreed with the jury's finding that Pizzitolo was a seaman and granted Electro–Coal's motion for ... [judgment notwithstanding the verdict] on the issue of seaman status." *Id.* In affirming the district court's granting of Electro–Coal's motion, the Fifth Circuit addressed the issue of "whether the jury was entitled to find that Pizzitolo, a harbor worker whose contract with vessels is limited to performing vessel repairs, was

---

1. In charging the jury, the Court relied on the well-known Fifth Circuit decisions of *Offshore Company v. Robison*, 266 F.2d 769 (5th Cir. 1959); *Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067 (5th Cir.1986) (*en banc*); and *Mungia v. Chevron Co., U.S.A.*, 768 F.2d 649, 653 (5th Cir. 1985), *cert. denied*, 475 U.S. 1050, 106 S.Ct. 1272, 89 L.Ed.2d 580 (1986).

a seaman within the meaning of the Jones Act." *Id.*

In deciding this issue, the *Pizzitolo* panel reviewed the historical background of the LHWCA and examined the definition of an LHWCA-covered employee. The panel considered the LHWCA's definition of an employee covered therein as the factor "most relevant" to the issue before it. 812 F.2d at 982. That definition includes "any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor worker including a ship repairman, shipbuilder, and ship-breaker, but such term does not include— ... (G) a master or member of a crew of any vessel...." 33 U.S.C. § 902(3)(G). In holding that Mr. Pizzitolo was not entitled to recover under the Jones Act, but rather only under the LHWCA, the Fifth Circuit explained that:

> because longshoremen, shipbuilders and ship repairers are engaged in occupations enumerated in the LHWCA, they are unqualifiedly covered by that Act if they meet the Act's situs requirements; coverage of these workmen by the LHWCA renders them ineligible for consideration as seamen or members of the crew of a vessel entitled to claim the benefits of the Jones Act.

*Pizzitolo*, 812 F.2d at 983.[2] *Pizzitolo* prohibits an employee from recovering under the Jones Act, even where he satisfied this circuit's test to be a Jones Act seaman, if he also is a longshoreman, ship repairer, or ship builder. Stated another way, where an employee is a longshoreman, ship repairer, or ship builder, regardless of his ability also to satisfy the test to be a Jones Act seaman, that employee's recovery is limited by *Pizzitolo* to that recovery which is provided by the LHWCA.

Pontchartrain contends that Mr. Pierre was performing longshoring activities both in the course and scope of his employment and at the time he was injured, and, therefore, he was a longshoreman both throughout his employment with it and at the time he was injured. Accordingly, Pontchartrain argues that Mr. Pierre's recovery is limited by *Pizzitolo* to that which is provided by the LHWCA.

The Court agrees with Pontchartrain's interpretation of *Pizzitolo*. There is no dispute that Mr. Pierre's injury occurred on navigable waters and, therefore, this action meets the LHWCA's locality test. Thus, despite a jury's finding Mr. Pierre a Jones Act seaman, if Pontchartrain is correct in its contention that Mr. Pierre was a longshoreman during the course of his employment with it, then Mr. Pierre may not recover under the Jones Act, but only under the LHWCA.

On the day Mr. Pierre suffered his alleged injury, he was aboard the DOS GRIS engaged in the normal course of his employment as a crane operator for Pontchartrain. It is these duties which Pontchartrain claims classify Mr. Pierre as a longshoreman since he was essentially involved in unloading operations. In support of its contention that Mr. Pierre was a longshoreman, Pontchartrain relies on *Caro v. ITO Corp.*, No. 86–3202, 1987 WL 10862 (E.D. La. May 8, 1987) and *Woods v. Dravo Basic Materials, Co.*, No. 86–664, 1987 WL 14359 (E.D. La. filed July 16, 1987).

In finding that its plaintiff was a longshoreman, the *Caro* court considered as important such factors as the plaintiff being hired out of a union hall and not working exclusively for the defendant, that the claimant did not permanently work for defendant, and that claimant's activities did not relate to the "navigation or operation of the crane barge." *Caro v. ITO Corp.* No. 86–3202, slip op. at 4 (E.D. La. May 8, 1987).

Mr. Pierre, however, was employed by and worked exclusively for Pontchartrain.

---

**2.** This Court feels the *Pizzitolo* panel misread 33 U.S.C. § 902(3) in that the definition of an employee covered under the LHWCA specifically precludes one "who is a master or member of the crew of a vessel". This Court interprets this language as specifically prohibiting one who is a master or member of the crew of a vessel from being an employee covered under the LHWCA. Nonetheless, despite this Court's reading of this language to be different from that of the *Pizzitolo* panel's, this Court also realizes that it is bound by *Pizzitolo's* interpretation of the language in question.

Furthermore, as a crane operator aboard a crane barge, his activities most certainly related to the barge's operation, as a jury has already found[3]. Consequently, Mr. Pierre's duties and functions aboard the DOS GRIS distinguish *Caro's* facts from those before this Court, and its holding does not, therefore, influence this Court in this case.

On the other hand, in *Woods*, a case more factually similar to this one than *Caro*, its plaintiff, Jimmie Woods, was employed as a crane operator by the defendant therein. Woods' duties consisted of unloading shells from a vessel onto a land-based conveyor by use of a crane aboard the vessel. As with Mr. Pierre, there was "no evidence that Woods performed any other functions to any significant extent" other than operating the crane to unload shells. *Woods*, slip op. at 1. The *Woods* court was faced with the same issue before this Court—was the plaintiff a longshore-man? After a thorough analysis, the *Woods* court determined that its plaintiff was a longshoreman since he was "employed to unload cargo from a vessel by use of a mechanical crane," and such duties constitute "longshoring activities." *Woods*, slip op. at 3.

In concluding that its plaintiff was a longshoreman, the *Woods* court relied in part on the legislative history of the 1972 amendments to the LHWCA, wherein it is explained that a claimant covered under the LHWCA is an employee who unloads cargo from a ship and immediately transports it "to a storage or holding area on the pier, wharf, or terminal adjoining navigable waters...." *Woods*, slip op. at 2, *citing* H.R. Rep. 92–1441, p. 10, U.S.Code Cong. & Admin.News 1972, pp. 4698, 4708.[4] It is this language, relied upon by the *Woods* Court

in finding its claimant to be a longshore-man, which this Court now relies upon, at least in part, in finding Mr. Pierre not to be a longshoreman. Longshoremen unload cargo onto a holding or storage area. Cargo is "typically unloaded from the ship and immediately transported to a *storage area or holding area* on the pier, wharf, or terminal adjoining navigable waters." *Id.* (Emphasis added). Mr. Pierre was unloading riprap. Riprap is not the type of cargo typically handled by a longshoreman. In Mr. Pierre's case, the riprap was not unloaded and immediately transported to a storage area. Rather, it was laid onto the bank of navigable waters and was intended to remain where Mr. Pierre laid it permanently. The Court, therefore, feels that Mr. Pierre was not unloading "typical" cargo, as it was not stored or held in an area of a pier, wharf, or terminal.

The Court also relies on the Fifth Circuit's recent decision in *Thibodeaux v. Torch, Inc.*, 858 F.2d 1048 (5th Cir.1988), in support of its finding that Mr. Pierre was not a longshoreman. Luke Thibodeaux, plaintiff therein, was employed by Torch, Inc., the defendant, as a crane operator. Thibodeaux spent approximately ninety percent of his time as an employee of Torch aboard a crane barge operating a crane which laid pipe offshore. However, Thibodeaux also helped load the crane barge with supplies necessary to perform the offshore pipe-laying operations. He was injured while assisting one of his fellow employees who became ill while both were working on very dry land in Torch's fabrication yard. In holding that a determination as to a plaintiff's status as a Jones Act seaman is to be made only after considering that plaintiff's activities throughout his entire employment with the defendant, the

---

3. The jury was charged that in order for Mr. Pierre to be a Jones Act seaman, Mr. Pierre's duties aboard the DOS GRIS must have "contributed to the function of the vessel or the accomplishment of its mission or the operation or welfare of the vessel." Thus, in finding that Mr. Pierre was a Jones Act seaman, the jury would have had to conclude that Mr. Pierre's duties contributed to the function, operation or welfare, or accomplishment of the vessel's mission.

4. The House of Representatives Report also explained that the injury for which the employee is claiming damages must also satisfy the LHWCA's situs requirement; namely, that the claimant's injury occurred over navigable waters or on land immediately adjacent thereto. *Id.*

*Thibodeaux* court gave the following explanation:

> [T]he activity of a plaintiff seeking damages under the Jones Act at the time of his injury is only one factor in the *Pizzitolo* analysis of whether or not that individual is engaged in an occupation covered by the LHWCA and thus ineligible for Jones Act coverage ... Thibodeaux also maintains that he spent approximately ninety percent of his employment time with Torch on board the [crane barge] ... Indeed, Torch does not dispute that Thibodeaux's job title for purposes of receiving compensation was a crane operator....

*Thibodeaux*, 858 F.2d at 1051.

In concluding that *Pizzitolo* did not bar Thibodeaux's right to a jury trial on the issue of his status as a Jones Act seaman, the *Thibodeaux* court explained that a "genuine issue of material fact existed as to Thibodeaux's status as a seaman." *Id.* This conclusion implies that an operator of a crane aboard a barge engaged in pipe-laying operations is not a longshoreman. If Thibodeaux's activities as a crane operator aboard a crane barge constituted longshoring activities, then there would have been no "genuine issue of material fact" and *Pizzitolo* would have barred Thibodeaux's Jones Act claim as a matter of law. In other words, this Court believes that if the Fifth Circuit felt Thibodeaux's activities aboard the crane barge were longshoring activities, then *Pizzitolo* would have prohibited Thibodeaux from pursuing remedies under the Jones Act. Instead, by reversing the district court's granting of Torch's motion for summary judgment, the Fifth Circuit allowed a jury to determine whether Thibodeaux's activities as a crane operator, throughout his entire employment with Torch, rendered him a Jones Act seaman.

This Court can logically draw only one conclusion from the Fifth Circuit's decision—that pipe laying activities are not longshoring activities *per se*. If the Fifth Circuit believed that Mr. Thibodeaux, as operator of a crane aboard a barge, which crane and barge were laying pipe, were a longshoreman *per se*, then it would have affirmed the district court's summary judgment barring Mr. Thibodeaux's Jones Act claims. In order to reverse the district court, the Fifth Circuit must not have felt that operating a crane barge constituted longshoring activities *per se*, because if it had felt that way, it would have affirmed the district court's prohibition of Mr. Thibodeaux's Jones Act claims.

Mr. Pierre was laying riprap. To accomplish this task, he operated a crane aboard a crane barge. After considering the trial evidence concerning Mr. Pierre's duties as an employee of Pontchartrain, and in accordance with the analysis set forth above, the Court finds that operating a crane barge in riprap laying operations does not constitute longshoring activities.[5] Consequently, Mr. Pierre was not engaged in longshoring activities *per se*, and is not an employee specifically enumerated in the Act, as was Mr. Pizzitolo. Therefore, this Court holds that because Mr. Pierre was not a longshoreman *per se*, the *Pizzitolo* decision does not preclude his seeking recovery under the Jones Act. Accordingly, this Court cannot find that Mr. Pierre was a longshoreman and therefore Pontchartrain's reliance on *Pizzitolo* is misplaced.

However, even if this Court's conclusion that Mr. Pierre was not a longshoreman is erroneous, Pontchartrain's motions must nevertheless be denied since *Pizzitolo's* precedential value was severely eroded by the more recent decision of the United States Court of Appeals for the Fifth Circuit in *Legros v. Panther Services Group, Inc.*,[6] wherein a divided panel of that court

---

**5.** The Court would be remiss in not discussing *Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291 (5th Cir.1987), which was relied upon by the *Thibodeaux* court in reversing the district court. In *Leonard*, the Fifth Circuit also reversed a district court's summary judgment because there was a material factual dispute over the plaintiff's job description. *Id.* at 296. However, there is no dispute over what Mr. Pierre's duties were during his employment with Pontchartrain.

**6.** On February 8, 1989 the United States Court of Appeals for the Fifth Circuit granted a "Suggestion for Rehearing *En Banc*" in *Legros. Legros v. Panther Services Group, Inc.*, No. 87–4370,

critically discussed its prior holding in *Pizzitolo*. Although refusing to explicitly overrule *Pizzitolo*, as it could not do,[7] the *Legros* majority criticized the method of analysis used by the *Pizzitolo* panel as being irreconcilable with the method of analysis used in the *Robison* line of cases. Moreover, the *Legros* majority stated that it was bound by the *Robison* line of cases since that line was older than the *Pizzitolo* line. Indeed, *Pizzitolo* is a veritable infant, perhaps illegitimate, in comparison to the grandfather of Jones Act cases, *Robison*. And, as the *Legros* majority explained, "when the panels of this circuit have applied different principles in earlier and later cases, and the conflict is later pointed out, we are obliged to follow the earlier line of cases...."[8] Therefore, *Legros*, although not an express overruling of *Pizzitolo*, compels this Court to apply the method of analysis used in *Robison* and its long line of descendants, not that method of analysis used in *Pizzitolo* and its much less numerous progeny.[9]

Accordingly,

IT IS THE ORDER OF THE COURT that the motion of defendant, Pontchartrain Dredging Corp., for summary judgment be, and the same is hereby, DENIED.

IT IS FURTHER ORDERED that the motion of defendant, Pontchartrain Dredging Corp., for a judgment notwithstanding the verdict, be and the same is hereby, DENIED.

---

Slip op. at 2057 (5th Cir. Feb. 8, 1989) (*en banc*). However, the appeal was later dismissed on May 2, 1989. *Legros v. Panther Services Group, Inc.*, 874 F.2d 953 (5th Cir.1989).

**7.** One panel of the United States Court of Appeals for the Fifth Circuit may not overrule a decision previously made by another. *Ryals v. Estelle*, 661 F.2d 904, 906 (5th Cir.1981).

**8.** Additionally, notwithstanding its being bound by the prior line of cases under *Robison*, "neither the text nor the history of the 1972 amend-ment supports changing the test traditionally used for distinguishing longshoremen and harbor workers from seamen." *Legros*, 863 F.2d at 351.

**9.** Since it was decided on March 20, 1987, *Pizzitolo* has been followed by this Circuit in three of its decisions subsequent thereto: *Thibodeaux v. Torch*, 858 F.2d 1048 (5th Cir.1988); *Williams v. Weber Management Services, Inc.*, 839 F.2d 1039, 1040 (5th Cir.1987); and *Leonard v. Dixie Well Service Supply, Inc.*, 828 F.2d 291 (5th Cir.1987).